AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
Western District of Arkansas
Fort Smith Division

US DISTRICT COURT
WESTERN DIST ARKANSAS
FILED
JAN 2 9 2020
DOUGLAS F. YOUNG, Clerk
By _____ Deputy Clerk

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| The Cellular Telephone Assigned | ) | Case No. 2:20 cm 9 |
| Call Number (479)214-2684 | ) | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe property to be searched and give its location):* **See Attachment A. This Court has authority to issue this Warrant under 18 U.S.C. § 2703(c)(1)(A) and Federal Rule of Criminal Procedure 41.**

located in the Western District of Arkansas, there is now concealed *(identify the person or describe the property to be seized):* **See Attachment B.**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

√ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

√ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 373 | Solicitation to Commit a Crime of Violence |
| 18 U.S.C. § 875(c) | Interstate Communication of a Threat |
| 18 U.S.C. § 2332a | Conspiracy to Use a Weapon of Mass Destruction |

The application is based on these facts:

√ Continued on the attached sheet.

√ Delayed notice of **30** days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Ryan Crump, FBI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 1/29/20

_____
*Judge's signature*

City and state:  Fort Smith, Arkansas

Mark E. Ford, United States Magistrate Judge
*Printed name and title*

## **ATTACHMENT A**

### **Property to Be Searched**

1.      The cellular telephone assigned call number **(479) 214-2684 (**the "Target Cell Phone"), whose wireless service provider is Tracfone through Verizon Wireless.  Tracfone is company headquartered at 9700 NW 112 Avenue, Miami, Florida  33178.  Verizon Wireless is a company headquartered at 180 Washington Valley Road, Bedminster, New Jersey 07921.

2.      Records and information associated with the Target Cell Phone that is within the possession, custody, or control of Verizon Wireless including information about the location of the cellular telephone if it is subsequently assigned a different call number.

## ATTACHMENT B

### Particular Things to be Seized

## I.     Information to be Disclosed by the Provider

All information about the location of the Target Cell Phone described in Attachment A for a period of 45 days, during all times of day and night. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of Verizon Wireless, Verizon Wireless is required to disclose the Location Information to the government. In addition, Verizon Wireless must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Verizon Wireless's services, including by initiating a signal to determine the location of the Target Cell Phone on Verizon Wireless's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate Verizon Wireless for reasonable expenses incurred in furnishing such facilities or assistance.

This Search Warrant does not authorize the seizure of any tangible property. In approving this Search Warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II.    Information to Be Seized by the Government

All information described above in Section I that constitutes evidence of violations of 18 U.S.C. § 373, 18 U.S.C. § 875(c) and 18 U.S.C. § 2332a involving Jason D'Juan GARFIELD and others yet unknown.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Search Warrant.

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

I, Ryan Crump, a Special Agent of the Federal Bureau of Investigation ("FBI") being duly sworn, depose and state:

## INTRODUCTION AND AGENT BACKGROUND

1) I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. I have been employed with the FBI since 2016. I am currently assigned to the FBI Little Rock Field Office, Fort Smith Resident Agency where I am tasked with conducting national security investigations. During my career as a Special Agent, I have been involved in a variety of investigative matters, including international and domestic terrorism matters. During the course of these investigations, I have assisted with Title III wire intercept affidavits, participated in the execution of search and arrest warrants, conducted physical surveillance, participated in controlled meetings with confidential sources, and communicated with other local and federal law enforcement officers regarding the manner in which those engaged in domestic terror activities conduct their business.

2) I submit this Affidavit in support of an Application for a warrant pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A), authorizing agents of the FBI to ascertain the physical location of a cellular telephone, including but not limited to data indicating the specific latitude and longitude of (or other precise location concerning) the cellular telephone (the "**REQUESTED INFORMATION**") [1], as described in Attachment B, for a period of 45 days. The assigned call number for the cellular telephone, as described in Attachment A, is **(479) 214-**

---

[1] Such information shall, where other information is unavailable, include records reflecting the tower and antenna face ("cell site") used by the **TARGET DEVICE** at the start and end of any call.

**2684** (the "**TARGET DEVICE**"), a mobile cellular telephone whose service provider is Verizon Wireless. I believe the current user of this device to be Jason D'Juan Garfield ("**GARFIELD**"). Based on the investigation to date, **GARFIELD** is known to Affiant as a racially motivated extremist engaged in violent rhetoric. As further described below, I believe **GARFIELD** is actively using the **TARGET DEVICE** in furtherance of violations of 18 U.S.C. § 373, 18 U.S.C. § 875(c) and 18 U.S.C. § 2332a.

3) I am familiar with the facts and circumstances of the investigation through my personal participation, from review of information received from a cooperating witnesses, discussions with other law enforcement officers, and from my review of records and reports relating to the investigation. Since I am submitting this Affidavit for the limited purpose of securing a warrant authorizing the acquisition of the **REQUESTED INFORMATION**, I have not included details of every aspect of the investigation.

4) Based on the information contained below, I submit that probable cause exists to believe **GARFIELD** and other individuals, known and unknown, have committed, and continue to commit, violations of 18 U.S.C. § 373, 18 U.S.C. § 875(c) and 18 U.S.C. § 2332a. Further, probable cause exists to believe the **TARGET DEVICE** is being used by **GARFIELD** to commit these violations, and that the **REQUESTED INFORMATION** will provide the location of **GARFIELD**, that the location information described in Attachment B will constitute evidence of these criminal violations, and will lead to the identification of other individuals who are engaged in the commission of the offenses, as well as other relevant evidence.

## USE OF CELLULAR TELEPHONES BY RACIALLY MOTIVATED EXTREMISTS

5) Based on my training, experience, and participation in other domestic terrorism investigations, I know racially motivated extremists:

a) Use cellular telephones to facilitate their criminal activities. Such telephones contain, among other things, the names and telephone numbers of criminal associates, text messages about criminal activity, and call details about telephone numbers that were called or received by the telephone;

b) Use cellular telephones to take photographs and videos which depict, among other things, their criminal activity, the accomplices involved in their criminal activity, and/or the possession of the fruits or instrumentalities of their criminal activity;

c) Use cellular telephones to conduct their illegal activity by contacting co-conspirators and other likeminded individuals. Cellular telephones are often used to schedule meetings to discuss potential or future activities;

d) Carry and maintain control of their cellular telephones at all times;

e) Often register their telephone numbers and communications accounts in fake or alias names in order to evade law enforcement detection; and

f) Often change or "drop" telephone numbers in order to insulate themselves from their criminal activities and to confuse investigators and evade law enforcement detection.

## STATEMENT OF PROBABLE CAUSE

6) On August 31, 2019, the FBI received information regarding private chat messages of five Facebook User IDs engaged in violent rhetoric. As part of this investigation, it is believed that the five Facebook accounts were used by three individuals, Jason D'Juan **GARFIELD** a/k/a "Moon Man" a/k/a "Jugger Bugger" (User IDs: 100039745848858, 100040632669718, and 100037513098779), Travis OWENS (User ID: 100009372128338), and J.W. (User ID: 100031411818671). Rhetoric in the private chat messages was consistent with racially motivated extremism ideology, to include aspirational violence against religious and racial minorities.

7) Your Affiant had previously believed and had previously advised this Court that the Facebook accounts I now know were used by **GARFIELD** were used by an individual by the name of Dalton Scott.

8) Your Affiant received information regarding three alias Facebook profiles, "Moon Man," "Jugger Bugger," and "Jugger Bugger." Telephone number 479-847-4569 was associated with "Moon Man." Telephone number **479-214-2684**, the **TARGET DEVICE**, was associated with one of the "Jugger Bugger" Facebook accounts. No telephone number was associated with the other "Jugger Bugger" Facebook accounts.

9) During the course of this investigation, the FBI had four sources of information to suggest 479-847-4569, the number associated with the "Moon Man" Facebook account, belonged to Dalton Scott.

  a) "Moon Man" was identified as Dalton Scott by the complainant.

  b) Telephone number 479-847-4569 was historically attributed to Dalton C. Scott by open sources searches.

  c) A search for 479-847-4569 in open source indicated it was associated with a Skype account for Dalton Scott.

  d) A grand jury subpoena return for one of Dalton Scott's Facebook accounts (in true name) indicated 479-847-4569 was paired with the account in 2015.

10) The number 479-847-4569 was previously identified as a Verizon Wireless (Verizon) phone number. After discussion with Verizon, the FBI was informed that 479-847-4569 was actually serviced by Tracfone, and that the FBI would need to consult Tracfone for subscriber information. Tracfone subsequently advised there was no subscriber information for the number

to report. As a result, attempts to verify the subscriber of the phone through the service provider yielded no further information.

11)   Verizon and Tracfone were unable to provide subscriber information for **479-214-2684**, the **TARGET DEVICE**. However, Verizon was able to provide GPS pings for this number, which were requested and obtained pursuant to emergency disclosure.

12)   In addition, the FBI served a subpoena to Tracfone for telephone number **479-214-2684**, the **TARGET DEVICE**, the results of which revealed the following information:

  a)  Name: N/A;

  b)  DOB: 09/11/97;

  c)  Security Pin: 1488;

  d)  Email: decanusbjorn@straighttalk.com;

  e)  Phone: 1351681175;

  f)  Address: 1351681175, Clarksville, AR 72830; and

  g)  Purchase Information: Phone was purchased at Walmart store 5360.

13)   The FBI has utilized a confidential source in this investigation who will be referred throughout this Affidavit as "CS1." CS1 did not recognize Dalton Scott as "Jugger Bugger." CS1 was shown a photo of **GARFIELD** and recognized **GARFIELD** as "Jugger Bugger." Affiant deems CS1 to be a reliable informant whose information can be trusted.

14)   **GARFIELD** was further identified following searches in open source law enforcement databases. **GARFIELD** was found to have a date of birth of September 11, 1997, which matched the date of birth provided in the Tracfone subpoena return for the **TARGET**

**DEVICE**. Furthermore, "1488" is a commonly used racist slogan.[2] The use of these four digits for a pin would be consistent with the rhetoric observed via the "Jugger Bugger" Facebook account.

15)    Through the course of this investigation, it was determined that **GARFIELD**, J.W., OWENS, and Colton Andrew PELTS (User ID: 100009106173104), were participants in a Facebook Messenger chat group named "Right Wing Death Squad." The following conversations between **GARFIELD**, J.W., OWENS, and PELTS took place over Facebook Messenger between August 2, 2019 and August 26, 2019:

a)    On August 2, 2019, J.W. messaged **GARFIELD**: "[W]e can take care of druggies any time. We need to get rid of Jews ASAP though." **GARFIELD** responded, "[d]o both at the same time. Clean up the white community and show them who's controlling and manipulating and our numbers go up...We don't have the time to do one goal at a time." J.W. stated, "I'm aware. Doesn't mean we need to be too hasty though. We need at least a rudimentary plan and proper resources before we try anything big."

b)    On August 4, 2019, **GARFIELD** messaged J.W.: "WE CAN ACCELERATE TODAY FOR A NEW WORLD TOMORROW." J.W. responded, "Give me some ammo and a couple extra mags. I've already got a couple of guns that'll be sufficient at the very least." GARFIELD messaged, "I'm really tempted to act soon. I can't stand by and do nothing." J.W. asked, "How many others do we have on our side that we immediately know of?" **GARFIELD** responded, "I don't know of anyone outside of

---

[2] "1488" is a popular white supremacist numeric symbol. "14" is shorthand for the "14 Words" slogan, "We must secure the existence of our people and a future for white children." "88" is numeric shorthand for "HH," which is shorthand for "Heil Hitler," as "H" is the eighth letter in the alphabet.

Atomwaffen[3] but they're all out of state and I don't know if I trust them...Let's just pull a McVeigh[4] in little rock." J.W. replied, "Possibly."

    c)    On August 5, 2019, J.W. stated, "[a] few thousand rounds of ammo, 20 mags, and a couple of automatic rifles... Throw in an armored vehicle and a small crew could do some serious damage. Some explosives could further the destruction." **GARFIELD** responded, "I need a more permanent solution." J.W. messaged, "you'll have to find more patience and save funds to afford better gear, and spend time gathering a larger group to carry out your plan." **GARFIELD** stated, "Just fucking McVeigh the DNC", and J.W. replied, "[t]hen you know what to buy. Call me up when you've got it and I'll be more than happy to help."

    d)    On August 7, 2019, **GARFIELD** messaged another user, "SPICS AND NIGGERS NEED TO HANG FROM TREES."

    e)    On August 8, 2019, J.W. messaged **GARFIELD**: "[1]0mm is best millimeter though." GARFIELD replied, "Yes it is. I only own one unfortunately. I need another...I've hit steel at 120 yards with it shooting Sig FMJs and it hit pretty hard...I just need to use it on some niggers now."

    f)    On August 8, 2019, **GARFIELD** messaged a group chat and stated to OWENS, "I want a full auto Scar H. Travis, hook me up with some goodies from the armory. I'll pay you $100 worth of McChickens." OWENS responded, "Lol I can't do that with how the security is now in the military it's ridiculous to get your issued M16A4 service rifle."

---

[3] I believe this to be a reference to Atomwaffen Division, a Neo-Nazi, and terroristic national socialist organization.

[4] I believe this to be a reference to Timothy McVeigh, an American domestic terrorist who perpetrated the 1995 Oklahoma City bombing that killed 168 people and injured over 680 others.

g)      On August 16, 2019, **GARFIELD** messaged the group chat and stated "I have access to 300k lbs of anhydrous ammonia. Just need a container to store it." OWENS responded, "Nice I have combat engineers as friends with access to c4." **GARFIELD** replied, "What kind of container does that shit need again?...Something that can handle high pressure with a release valve to bleed off excess pressure. I could probably make one with spare parts from the refrigeration guys at work. BOMBS AWAY MR. MCVEIGH." OWENS messaged, "[y]es kill them all...I have access to so much hahaha we can make it rain bullets for days."

h)      On August 20, 2019, **GARFIELD** messaged PELTS stating that he wanted to kill Black people, to which PELTS responded "Let's do it."

i)      On August 22, 2019, J.W.  messaged **GARFIELD**: "[w]hites have true diversity. We are not all the same. Our differences are what make us unique and human. Niggers have no such luxury, nor do they truly understand that concept. They ask think in the same selfish animal way. And that's all they are- animals. And with the current state of the world, they have become severe pests. They must be eradicated. Completely and utterly." **GARFIELD** replied, "Racism isn't real, whites are the only humans."

j)      On August 26, 2019, J.W.  messaged the group chat, "Anyone want to try produce a B-50 BRB with me then?" "Killing niggers is a greater source of dopamine. KKK tested, *unofficially* Crusade approved." On August 26, 2019, PELTS responded "I'll do it James," to which J.W. wrote "We need a 50 gallon barrel, a shit load of duct tape, an ass ton of potassium nitrate (go to the co-op and claim it's for stump removal or hobby rocket building if asked, hope not to get arrested since both can technically be seen as true), lots of sugar, and some cardboard. I've got $40 to give to the cause, which can get

3 things on our list." PELTS responded "Idk where to get a 50 gallon barrel" and J.W. responded "Online. Seriously, you can get 50 gallon drums/barrels all over the internet if you look." PELTS responded "Ok." J.W. continued, "Now we just need that sweet, sweet, potassium nitrate...But honestly, if we're doing something like this, forget the barrel. Just get a shit load of PVC pipe. Preferably two sizes, of which one should fit somewhat loosely inside of the other. Because then we can make knockoff Panzerschreck launchers...Might as well have a couple hours of fun instead of a few seconds."

16) On October 18, 2019, the FBI received information concerning private chat messages between an account created on October 9, 2019, with the User ID: 100042287731351, using the name "Jason Vulgamore," and another unidentified Facebook user. Based upon the information associated with the User ID: 100042287731351, it is believed that **GARFIELD** is the user of the account. The **TARGET DEVICE** is associated with User ID: 100042287731351.

17) The following conversation between **GARFIELD** and the unidentified Facebook user took place over Facebook Messenger between October 14, 2019 and October 15, 2019:

a) On October 14, 2019, **GARFIELD** messaged the Facebook user: "Soon brother...white marker...Saint Tarrant.[5]" The Facebook user responded, "I don't get it." **GARFIELD** then sent the following images:

---

[5] I believe the images on GARFIELD's handgun are decorated similarly to the rifle used by the Christ Church, New Zealand mosque shooter, Brenton Tarrant.



5, 6



7, 8, 9

---

[6] I believe the symbol bearing resemblance to a hashtag or pound sign is likely a reference to the Iron Guard, a Romanian fascist group.

[7] I believe the slogan "13=50" may be a reference to the perceived belief that despite only making up 13% of the population, African Americans commit 50% of crime.

[8] I believe the acronym "A30B" is likely a reference to the Azov Battalion, which is a Ukrainian National Guard Unit with Neo-Nazi ties.

[9] I believe the numbers "42089" are likely a reference to Adolf Hitler's birthday, April 20, 1889.



10, 11

b)      On October 15, 2019, **GARFIELD** reached out to the same unidentified Facebook user and messaged, "The AR is next. And to explain some of them, 4/20/1889 is Hitler's birthday, Azov battalion is a Ukrainian Right Wing Death Squad, Kali Yuga is a stage of enlightenment, where the world is right now, the Iron Guard was a Romanian Orthodox Fascist political party, Prinz Eugen was the SS division my great grandfather started in, and I chose the 2nd Latvian insignia because Saint Tarrant[12] had the 1st Latvian on his rifle."

18)      **GARFIELD** has communicated on Facebook with other persons engaged in racially motivated, extremist rhetoric. Additionally, Your Affiant has reviewed the messages exchanged between **GARFIELD**, PELTS, OWENS and J.W. between on or about June 11, 2019

---

[10] I believe the number "14" was painted next to the word "Dirlewanger" and may be a reference to the "14 words" slogan initially coined by David Lane, a member of the white supremacist group known as "The Order." The "14 words" state, "We must secure the existence of our people and a future for white children."

[11] I believe the 2nd Latvian insignia is displayed on the slide of GARFIELD's handgun following the word, "Dirlewanger." "Dirlewanger" may be a reference to former Nazi SS Officer Oskar Dirlewanger, or the penal unit he created within SS called the Dirlewanger Brigade.

[12] I believe Saint Tarrant is in reference to Brenton Tarrant who has been hailed as a saint by many within white supremacist groups.

and on or about September 1, 2019, obtained from a previously-issued search warrant[13]. Those messages contained discussions about the research, procurement, and development of improvised explosive devices (IEDs), illegally manufactured firearms, ammunition, and ballistic body armor to be used in attacks against racial and religious minorities.

19) On October 29, 2019, **GARFIELD** and PELTS were observed by the FBI surveillance team traveling to Wilkerson Auto Sales, 1005 North 18th Street, Ozark, Arkansas, in a vehicle believed to be operated by PELTS.

20) On November 13, 2019, FBI surveillance observed **GARFIELD** meeting with PELTS at 200 North 2nd Street, Coal Hill, Arkansas, which is in the Western District of Arkansas. Based on my investigation, it is believed that this address belongs to Johnathon Pelts, likely, the father of PELTS. Later the same day, GARFIELD was observed at PELTS's previously identified residence of 404 Highway 64 Altus, Arkansas, which is in the Western District of Arkansas.

21) On November 4, 2019, the Honorable Magistrate Judge Mark E. Ford, seated in the Western District of Arkansas, issued a court order authorizing the installation and use of Pen Registers and Trap and Trace for **TARGET DEVICE** (Case Number: 2:19CM55).

22) Telephone number, 501-683-9887, believed to be associated with PELTS, had approximately 74 communications with **TARGET DEVICE** from December 10, 2019 through January 24, 2020.

23) The FBI has utilized a confidential source in this investigation who will be referred throughout this Affidavit as "CS2."

---

[13] Case Number: 2:19CM40.

Page **12** of **17**

24)     The investigation to date has determined that **GARFIELD** resides with his girlfriend and her family at a residence in Ozone, Arkansas, which is in the Western District of Arkansas.

25)     On or around December 6, 2019, CS2 observed PELTS and **GARFIELD** at **GARFIELD**'s place of residence, 2310 County Road 4490, Ozone, Arkansas, which is in the Western District of Arkansas.

26)     On October 26, 2019, the Honorable Magistrate Judge Mark E. Ford, seated in the Western District of Arkansas, issued a Search and Seizure Warrant for the real-time geolocation data for **TARGET DEVICE** for a period of 45 days, which expired on December 13, 2019 (Case Number: 2:19CM53).

27)     On December 13, 2019, the Honorable Magistrate Judge Mark E. Ford, seated in the Western District of Arkansas, issued a Search and Seizure Warrant for the real-time geolocation data for **TARGET DEVICE** for a period of 45 days, which expired on January 27, 2020 (Case Number: 2:19CM63).

28)     In addition to the search warrants for **TARGET DEVICE** referenced above, the investigation also obtained a tracker warrants for **GARFIELD**'s vehicle (Case Numbers 2:19CM62 and 2:20CM6)

29)     On January 7, 2020, the Honorable Magistrate Judge Mark E. Ford, seated in the Western District of Arkansas, issued a court order authorizing the installation and use of Pen Registers and Trap and Trace for **TARGET DEVICE** (Case Number: 2:20CM1).

30)     On or around January 21, 2020, FBI surveillance observed **GARFIELD** meeting with CS2 at a location in Fort Smith, Arkansas, which is in the Western District of Arkansas.

31)     Pen Register and Trap and Trace analysis for **TARGET DEVICE** revealed that on January 21, 2020, **TARGET DEVICE** had approximately 29 contacts with a telephone number operated by CS2.   Your Affiant believes that **GARFIELD** continues to utilize **TARGET DEVICE** to communicate with associates previously identified in this investigation.

32)     I know, based on my experience as a law enforcement officer as well as my own personal experience, that while people may not always be in or with their personal vehicles, they almost always have their cellular phones with them with very few exceptions. Vehicles sometimes have to go in for both routine and extensive repairs and maintenance, during which the vehicle's owner relies upon other means of travel. Thus, having the real-time geolocation data for **TARGET DEVICE** in addition to a GPS tracking device on **GARFIELD**'s vehicle prevents informational holes in its digital surveillance of **GARFIELD**.

33)     The preceding paragraphs demonstrate that the location of the **TARGET DEVICE** is very important to accomplishing the goals of the investigation. As previously stated, your Affiant is aware and it is common knowledge, that people have their cellular phones with them at all times. The **REQUESTED INFORMATION** of the **TARGET DEVICE** would help law enforcement determine where **GARFIELD** is located and would aid in the FBI's ongoing surveillance operation. The **REQUESTED INFORMATION** would also alert law enforcement if **GARFIELD** visits any locations that sell items that can be used to produce IEDs, illegally manufactured firearms, ammunition, ballistic body armor, and biological weapons, as well as if **GARFIELD** is traveling to any locations mentioned as potential target sites.

## AUTHORIZATION REQUEST

34)     Based on the foregoing, your Affiant requests that the Court issue the proposed Search Warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

35)     Your Affiant further requests, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the **TARGET DEVICE** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed Search Warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

36)     Your Affiant further requests that the Court direct Verizon to disclose to the Government any information described in Attachment B that is within the possession, custody, or control of Verizon Wireless. I also request that the Court direct Verizon Wireless to furnish the Government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with Verizon Wireless services, including by initiating a signal to determine the location of the **TARGET DEVICE** on Verizon Wireless network or with such other reference

points as may be reasonably available, and at such intervals and times directed by the Government. The Government shall reasonably compensate Verizon Wireless for reasonable expenses incurred in furnishing such facilities or assistance.

37) Your Affiant further requests that the Court authorize execution of the Search Warrant at any time of day or night, owing to the potential need to locate the **TARGET DEVICE** outside of daytime hours.

## CONCLUSION

38) Based on the forgoing, Your Affiant requests that the Court issue the proposed Search Warrant.

39) This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

40) Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this Search Warrant.

## REQUEST FOR SEALING

41)     Your Affiant further requests that the Court order that all papers in support of this
Application, including the Affidavit and Search Warrant, be sealed until further order of the Court.
These documents discuss an ongoing criminal investigation that is neither public nor known to all
of the targets of the investigation.  Accordingly, there is good cause to seal these documents
because their premature disclosure may seriously jeopardize that investigation.

Ryan Crump
Special Agent
Federal Bureau of Investigation

Sworn to and subscribed before me this 29 day of January, 2020.

HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE